```
               UNITED STATES DISTRICT COURT

              CENTRAL DISTRICT OF CALIFORNIA

                          ---

     THE HONORABLE DALE S. FISCHER, JUDGE PRESIDING




 Federal Deposit Insurance          )
 Corporation,                       )
                  Plaintiff,        )
                                    )   Case No. CV 10-4915-DSF
 vs.                                )
                                    )
 Van Dellen, et al.,                )
                  Defendants.       )
 _____    )




              REPORTER'S TRANSCRIPT OF PROCEEDINGS

                    Los Angeles, California

                   Monday, February 28, 2011


Pamela A. Batalo, CSR, FCRR
Official Reporter
Roybal Federal Building
255 East Temple Street
Room 181-I
Los Angeles, California  90012
(213) 687-0446
```

```
 1  APPEARANCES:

 2

 3   FOR PLAINTIFF:          NOSSAMAN, LLP

 4                           BY:  THOMAS D. LONG

 5                                DAVID GRAELER

 6                           445 S. FIGUEROA STREET

 7                           31ST FLOOR

 8                           LOS ANGELES, CA   91007

 9

10   FOR DEFENDANTS          PAUL, HASTINGS, JANOFSKY &

11   SHELLEN AND KOON:       WALKER, LLP

12                           BY:  KIRBY BEHRE

13                           875 15th STREET NW

14                           WASHINGTON, DC 20005

15

16   FOR DEFENDANTS          CORBIN, FITZGERALD AND ATHEY, LLP

17   VAN DELLEN AND          BY:  MICHAEL FITZGERALD

18   ROTHMAN:                601 WEST 5th STREET

19                           SUITE 1150

20                           LOS ANGELES, CA   90071

21

22

23

24

25
```

|   |   |
|---|---|
| 1 | <u>Los Angeles, California, Monday, February 28, 2011</u> |
| 2 | <u>11:50 a.m.</u> |
| 3 | -oOo- |

4   THE CLERK: Calling Item No. 14, CV 10-4915-DSF,
5   *Federal Deposit Insurance Corporation vs. Van Dellen, et al.*
6   MR. LONG: Good morning, your Honor.  Thomas Long of
7   Nossaman, LLP for plaintiff, Federal Deposit Insurance
8   Corporation, along with my partner, David Graeler.
9   MR. BEHRE: Good morning, your Honor.  Kirby Behre on
10  behalf of defendants, Shellen and Koon.
11  MR. FITZGERALD: Good morning, your Honor.  Mike
12  Fitzgerald on behalf of defendants Van Dellen and Rothman.
13  THE COURT: Just barely morning, but good morning.
14      Well, I always appreciate a good laugh, but I don't
15  have 50 days to try, if you meant, Phase 1.  I don't have 30 to
16  35 days either, so you're going to have to sit down and figure
17  out how to get this organized in a way that it can be resolved
18  without so much trial time.
19      In that regard, let me ask you how you came up with
20  the list of matters that you thought you might want to start
21  with?
22  MR. LONG: Your Honor, plaintiff chose those matters,
23  ten borrower relationships, based upon the ones that we felt
24  were the strongest and also based upon attempting to prove a set
25  of damages that would match what we believe the available

1  insurance limits are.  We believe that it would be very unlikely
2  that there would ever be any trial beyond Phase 1.
3        THE COURT:  I see.  So your thought is then that the
4  rest of them are going to be dropped once you've exhausted that
5  coverage?
6        MR. LONG:  Yes, your Honor.  Once coverage has been
7  exhausted and assuming there are no other available assets,
8  which we believe there will not be.
9        THE COURT:  And it makes no difference to the
10 plaintiff or anyone else how you get the judgment, as long as
11 you get the maximum amount of insurance proceeds?
12       MR. LONG:  Well, I think that's correct; I mean,
13 unless we discover there's some assets here other than insurance
14 proceeds, which we don't believe there are.  Our primary goal is
15 to maximize our recovery.
16       THE COURT:  The victim is IndyMac.  There is no other
17 place that the insurance proceeds -- no other claim to those
18 proceeds?
19       MR. LONG:  No.  There are multiple claims to the
20 insurance proceeds, and we have separately filed a declaratory
21 relief action in state court to address that.
22       THE COURT:  Right.
23       MR. LONG:  So there are multiple competing claims so
24 we obviously want a trial date because all of us are going to be
25 in a race to judgment.

1    THE COURT: Well, I know the Defense won't like the
2 question, but what about the individuals?
3    MR. LONG: In what sense, your Honor?
4    THE COURT: Well, is that it? If they don't have any
5 insurance, they're not liable?
6    MR. LONG: If they don't have any insurance, they're
7 liable, but I think their assets are not likely to be a
8 significant portion of the recovery here. I haven't conducted
9 financial discovery of the individuals, but IndyMac is not a
10 situation where the officers were selling off stock. At its
11 peak, they appeared to have not done that.
12    THE COURT: You just think they were negligent and
13 otherwise breached their duties?
14    MR. LONG: That's correct.
15    MR. FITZGERALD: Your Honor, on the Court's point
16 about these particular loans, Mr. Behre and I are in discussions
17 with the Plaintiff about whether these loans should be a Phase
18 1, and if do we agree to that on whether the remaining things
19 should be dismissed pursuant to Rule 41, I think we will -- if
20 the Court will hold off on ordering that today, I think we will
21 reach agreement very soon.
22    You know, Mr. Long has pointed out that it's unlikely
23 there would be a further trial. In fact, it's clear there
24 wouldn't be a further trial, in which case we believe that our
25 clients, the individual defendants, should have the advantage of

```
 1   having that be made clear and having, pursuant to Rule 41, the
 2   other counts be dismissed, and it's those precise terms that
 3   we're negotiating now with the FDIC.
 4           THE COURT:  All right.  Well, as I said, you'll have
 5   to come up with a way to make this a shorter trial.
 6           Where was the insurer?  There's one that agrees that
 7   it's liable but has a cap you don't like?  Are they going to be
 8   participating in the process here?
 9           MR. LONG:  Well, your Honor, it's, much more -- I wish
10   it were that simple.
11           There are 12 insurers.  There are two policy years.
12   The question key question in terms of coverage is whether the
13   various claims that implicate the insurance implicate one policy
14   year or implicate two.  All of the attorneys in the room today,
15   I think, would agree that they implicate two, but you don't have
16   any people representing the carriers here today so you're not
17   hearing from the full picture.
18           I also think, in response to what Mr. Fitzgerald said,
19   it may well be that we can reach some sort of a negotiation, but
20   I have to cover all eventualities.  I mean, I still don't know
21   what the assets of the individual defendants are.  Perhaps
22   Mr. Fitzgerald's client is holding the winning ticket to the
23   Irish Sweepstakes.  I can always hope.
24           But I think if we do put our heads together, we can
25   come up with the mechanism.  I guess we need to know from the
```

```
 1   Court what amount of time would be suitable for a trial and also
 2   what alternatives are there we can make use of to shorten the
 3   trial, whether it be by presentation of testimony, by
 4   stipulation, or is there a mechanism by which we could stipulate
 5   to a trial before a magistrate judge?  I'm just inquiring.  I
 6   haven't discussed any of these with my client, but I think it
 7   would help all the parties in our discussions.
 8            We, of course, knew that the trial estimate we gave
 9   your Honor was a very difficult one.  On the other hand, these
10   loans are each multi-million dollar loans, and essentially
11   Mr. Fitzgerald analogized my case to a car wreck, and I guess
12   what I would say is it's actually 67 separate car wrecks with
13   all the witnesses involved, and if I were to tell you that this
14   would be a 10-day trial, I would either be fibbing to you, or I
15   would be envisioning that we'd all talk as fast as the Federal
16   Express man.  So I think we need your guidance as to how to --
17   steps that are available to us to shorten the trial.
18            THE COURT:  Well, a couple of points.  One is you
19   won't be talking that quickly because my court reporter won't
20   allow it.  The other is the trial will take such time as I allow
21   you, and when your time is up, you stop talking and sit down.
22            Another is I can't really tell you what a reasonable
23   period of time is because I don't want to be any more arbitrary
24   than I already seem, so I would need to know more about exactly
25   how you are going to have to prove your case.
```

```
 1              But one question I have is whether doing one or two of
 2    these makes more sense and whether they're typical enough that
 3    it's likely that if the jury finds -- and I assume you want a
 4    jury trial -- if the jury finds in your favor on those two, that
 5    it's a lot more likely then that the case will settle for the
 6    insurance proceeds, whatever they are, or maybe picking one of
 7    the ones that you think is the strongest and one of the ones
 8    that the Defense thinks is the weakest so you can get some idea
 9    of where you're likely to come out.
10              I don't know enough about the facts and I didn't read
11    your short plain statement of the case in your hundreds of
12    paragraphs.  I read enough to decide that I didn't have time to
13    read any more over the weekend.
14              So there's probably a couple of different ways to go
15    about it.  And the problem in talking about what a reasonable
16    time frame is, is unlike state court, we handle both civil and
17    criminal so I have a Speedy Trial Act to worry about, and then
18    again, if the government shuts down, we won't be doing any civil
19    jury trials, presumably.  So all of those things are things for
20    you to contemplate.
21              MR. BEHRE:  Your Honor, I think that's very helpful,
22    and I think also the way it's staged -- and maybe the answer is
23    we can come up with a smaller number of loan relationships to
24    take -- if we are going to try a particular relationship with a
25    particular borrower, it makes sense to do all of that at once.
```

1  It would be duplicative and inefficient to do otherwise.
2           On the other hand, depending on your Honor's
3  availability, it certainly would be possible to take a borrower
4  relationship or two and try those and then have a gap in time
5  and try others.
6           Now, I guess that might involve using multiple juries,
7  which has a certain inefficiency to it.  I also don't think,
8  frankly, if defendants persuade me that portions of my case are
9  weak enough that I shouldn't take them to trial I'd be more
10 inclined to discuss with my client dismissing them.  We have
11 loans where we believe the provable damages are between 300 to
12 $500 million, not including pre-judgment interest.
13          Assuming we're right on the available insurance, the
14 available insurance is at most, because we can only trigger,
15 with this lawsuit, one policy year -- is at most $80 million,
16 and it's a wasting policy.
17          So under those circumstances, I think we can all
18 confidently agree that it's highly unlikely that everything goes
19 to trial, and I think your Honor has given us some suggestions
20 that as we discuss it further, we can come up with mechanisms to
21 address it and shorten what's available.
22          And I understand what your Honor says -- I mean, I
23 assume what we would do is present to your Honor a statement of
24 the case, and perhaps your Honor would assign us, as I remember
25 seeing Judge Hupp doing, a certain number of trial minutes, and

1   we would get an understanding, as the clock is ticking by, how
2   much time is left, and it would help focus us, and certainly it
3   does.
4           THE COURT: Yes. Yes, indeed.
5           Anything else from the Defense?
6           MR. BEHRE: Yes, your Honor. Just briefly.
7           To answer your Honor's question, I don't believe that
8   if liability were found in the first ten loans that it would in
9   any way suggest that there was liability on the subsequent
10  loans.
11          I think the quandary we're facing here is the result
12  of an unwieldy Complaint. I'm not in favor of two -- of trying
13  this case twice. It's basically two bites at the apple that the
14  FDIC is looking for.
15          I think that what should happen is that they should
16  seriously reconsider their case and consider dropping some of
17  these counts to make this triable within your Honor's schedule.
18          THE COURT: Spoken like a true defense lawyer, which I
19  used to be. But that's just because you would prefer that they
20  do that. It doesn't mean that they're going to or that I would
21  compel them to do that.
22          So I think, you know, you're all good lawyers. You
23  can go work further on this. You have chosen outside ADR. I
24  forget. It was probably in your papers. Have you started
25  discussions yet?

1         MR. LONG: We have, your Honor. We've had -- someone
2    will correct me if get this wrong. I believe we've had a total
3    of six days of mediation sessions, both in New York and
4    San Francisco, with Judge Weinstein, and I think as we set forth
5    in the joint status report, we are not making progress. And as
6    a result, one of the carriers filed a declaratory relief action.
7    The bankruptcy trustee filed a declaratory relief action, and
8    late last week, we filed a declaratory relief action.
9         But that all being said, all of the lawsuits that are
10   pursuing the same insurance coverage are charging forward now.
11   So that's the current status of the mediation, and no new
12   sessions are scheduled at this time, unfortunately.
13        THE COURT: All right. Well, I don't know the
14   gentleman, but he has resolved a number of substantial cases
15   that have been before me, so I'm sure it's not for lack of
16   trying on his part, from what I hear.
17        So you should all continue talking. I'll go ahead and
18   set the dates, and maybe the case will get whittled down in some
19   way. I suppose you might want to consider just preparing sort
20   of a mini presentation of your positions, if the case lends
21   itself to that, and -- I don't know -- and perhaps selecting a
22   federal judge closer out here with some more experience in
23   federal juries, etc., and sort of do a mini presentation and get
24   that judge's thoughts on things, but I'll leave that to you at
25   this point.

```
 1              MR. LONG:  Your Honor, the problem with potential
 2   settlement, I don't think involves any of the parties in the
 3   room now.
 4              THE COURT:  Okay.
 5              MR. FITZGERALD:  Your Honor, I just wanted to comment
 6   on that.  The Court is suggesting Judge Tevrizian, and
 7   Judge Tevrizian is the monitor that keeps track of what all the
 8   parties are doing for the bankruptcy court in order to keep the
 9   policies from being depleted, but for that reason, he interacts
10   with the parties constantly, and it would be difficult to then
11   serve in a settlement role.
12              THE COURT:  I wasn't -- did I mention a name?
13              MR. FITZGERALD:  You did not, your Honor.
14              THE COURT:  I never do.  It doesn't matter to me.
15              MR. FITZGERALD:  But the other thing I wanted to say,
16   your Honor, is that we are working diligently on the settlement,
17   and there is a possibility that the filing of the declaratory
18   relief actions will itself then be a way of breaking a logjam,
19   and that's sort of the path that we're now going to follow.
20              THE COURT:  Okay.  Well, at least you got together and
21   agreed on dates, so we'll go ahead and set those and see what we
22   can accomplish between now and then.
23              September 11th, 2012, is the date for trial.
24   August 13th is the date for the pretrial conference, and that's
25   the date in which I'll give you my analysis of how much time it
```

```
 1  should take each of you or how much time I'll allow each of you
 2  to try the case.
 3          July 30th for lodging the Pretrial Conference Order,
 4  etc., all those other things on the timetable.  July 23rd for
 5  Memo of Contentions of Fact and Law, exhibit and witness lists,
 6  motions in limine, etc.
 7          Last day to conduct a settlement conference is
 8  June 18th.  The last day -- and I'll remind you that's the last
 9  day for hearing motions, not the earliest day for hearing
10  motions -- June 4th.  March 21st, your non-expert discovery
11  cutoff.  Initial expert disclosure, February 10th.  Rebuttal
12  disclosure, March 13th.  And expert discovery cutoff,
13  April 13th.  The last date to amend pleadings or add parties,
14  June 22nd.
15          And as I said, outside ADR is fine, and do the best
16  you can, and I'll see you at some point in the future.
17          MR. LONG:  Thank you, your Honor.
18          THE COURT:  Thank you.
19          MR. BEHRE:  Thank you, your Honor.
20          MR. FITZGERALD:  Thank you, your Honor.
21
22          (Proceedings adjourned at 12:07 p.m.)
23
24
25
```

*CERTIFICATE OF OFFICIAL REPORTER*

*COUNTY OF LOS ANGELES )*
                      *)*
*STATE OF CALIFORNIA   )*

*I, Pamela A. Batalo, Federal Official Realtime Court Reporter, Registered Professional Reporter, in and for the United States District Court for the Central District of California, do hereby certify that pursuant to Section 753, Title 18, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.*

*Date:  March 8, 2011*

*/s/ Pamela A. Batalo*
*Pamela A. Batalo, CSR No. 3593, FCRR, RPR*
*Federal Official Court Reporter*