ROBERT L. CORBIN (State Bar No. 75445)
MICHAEL W. FITZGERALD (State Bar No. 127164)
JESSICA TULK (State Bar No. 266258)
CORBIN, FITZGERALD & ATHEY LLP
601 West Fifth Street, Suite 1150
Los Angeles, California 90071-2024
Tel: (213) 612-0001
Fax: (213) 612-0061
rlcorb@corbfitzlaw.com
mwfitz@corbfitzlaw.com
jtulk@corbfitzlaw.com

Attorneys for Defendants
SCOTT VAN DELLEN and WILLIAM ROTHMAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR INDYMAC BANK, F.S.B., <br><br> Plaintiff, <br><br> v. <br><br> SCOTT VAN DELLEN, *et al.*, <br><br> Defendants. | Case No. CV 10-4915 DSF (SHx) <br> The Honorable Dale S. Fischer <br><br> **DEFENDANTS SCOTT VAN DELLEN AND WILLIAM ROTHAMN'S NOTICE OF MOTION AND MOTION TO NARROW THE CASE FOR TRIAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> [Declaration of Robert L. Corbin and Exhibits and Declaration of Michael W. Fitzgerald filed herewith] <br><br> Date: January 23, 2012 <br> Time: 1:30 pm <br> Place: Courtroom 840 |

Corbin,
Fitzgerald &
Athey LLP

DEFENDANTS VAN DELLEN AND ROTHMAN'S MOTION TO NARROW THE CASE FOR TRIAL

TO THE CLERK OF THE ABOVE-TITLED COURT AND TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on January 23, 2012, at 1:30 p.m. or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Dale S. Fisher, United States District Judge, at the Edward R. Roybal Federal Building and United States Courthouse, Courtroom 840, 255 East Temple Street, Los Angeles, California, defendants Scott Van Dellen and William Rothman, by through their attorneys of record, will and hereby do move for an order that the case be narrowed for trial.

This Motion is made pursuant to Rule 41 of the Federal Rules of Civil Procedure and this Court's inherent authority. This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Robert L. Corbin and Exhibits and Declaration of Michael W. Fitzgerald filed herewith, and upon such additional evidence and argument as this Court accepts at the hearing on this motion. Counsel request that this Court take judicial notice of Exhibits A and B to Mr. Corbin's declaration, pursuant to Rule 201(d) of the Federal Rules of Evidence.

Several conferences of counsel were held pursuant to Local Rule 7-3, including a telephonic conference of all counsel held on October 28, 2011.

Counsel have conferred and reached agreement on a briefing schedule in light of the holidays. This proposed briefing schedule will be submitted to this Court by way of a stipulation.

Dated:  December 21, 2011.

                                        Respectfully submitted,

                                        CORBIN, FITZGERALD & ATHEY LLP

                                        By:          /s/            
                                               Robert L. Corbin
                                        Attorneys for Defendants
                                        Scott Van Dellen and William Rothman

1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND .................................................................................................. 2

   A. HBD and the Complaint ................................................................................ 2

   B. The Status Conference ................................................................................... 4

III. THIS COURT SHOULD NARROW THE CASE .............................................. 8

   A. This Court has the Authority to Narrow the Case or Order the Parties Do So ................................................................................................. 8

   B. This Court Should Exercise its Discretion to Narrow the Case ..................... 9

IV. CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*De Anda v. City of Long Beach*,
    7 F.3d 1418 (9th Cir. 1993) .................................................................................. 8

**Statutes**

Fed. R. Civ. Proc. 1 .................................................................................................. 10
Fed. R. Civ. Proc. 16(a) ............................................................................................. 8
Fed. R. Civ. Proc. 21 .................................................................................................. 8
Fed. R. Civ. Proc. 42(b) ............................................................................................. 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

This action is one of numerous lawsuits arising from the collapse and government takeover of Indymac Bank, FSB ("Indymac") on July 11, 2008. This action is based on the Homebuilder Division of Indymac ("HBD"), which did not involve residential mortgages. HBD was distinct in its business model, underwriting, types of loans, policies and procedures, and executives. Likewise, this action is based on activities unique to HBD – the underwriting of large loans to residential home builders, who would typically then sell the homes and repay the loans. Plaintiff Federal Deposit Insurance Corporation ("FDIC") as Receiver for Indymac, alleges that at least 66 loans were negligently granted. The complaint is 312 pages long. The defendants are Scott Van Dellen (CEO and President of HBD), Kenneth Shellem (Chief Credit Officer of HBD), Richard Koon (Chief Production Officer of HBD), and William Rothman (Koon's successor and President of the Major Builders Group). Van Dellen and Rothman are represented by Corbin, Fitzgerald & Athey LLP. Shellem and Koon are represented by Paul Hastings LLP.

At the status conference on February 28, 2011, the FDIC presented this Court with a proposal to hold a "Phase 1" trial on ten loan relationships, with the trial approximately 50 court days. This Court stated that it did not have 50 days, or even 30 or 35 days, and directed the parties to agree on a proposal to try this action within a reasonable period of time. The parties have not done so.

At present, each party has a separate proposal:

***Van Dellen and Rothman*** propose that five loan relationships be chosen. The FDIC would choose two, Van Dellen and Rothman would choose one, Shellem and Koons would choose one, and the parties would agree on the fifth relationship, or submit the matter to the magistrate judge if they cannot agree.

***Shellem and Koon*** also propose that Phase 1 be limited to five loan relationships. However, Shellem and Koon believe that the FDIC has both the right and obligation to choose the loan relationships, but that the choice should be limited to the ten loan relationships proposed in February 2011.

***The FDIC*** will state its proposal fully in its opposition to this Motion. The defendants learned yesterday during a further meet-and-confer that the FDIC will propose that all loans in the complaint be addressed at one trial, based upon extensive use of expert testimony.

Van Dellen and Rothman respectfully request that this Court select their proposal. More important, however, is that this Court should select one of the proposals in general and order the parties immediately to meet and confer about the details.

## II.
## BACKGROUND

**A.   HBD and the Complaint.**

Indymac was a Pasadena-based bank that was best known in the financial industry for originating or otherwise acquiring residential mortgages, which would then be sold in the secondary market or used to create residential mortgage-backed securities (MBS). Indymac would also typically retain the lucrative servicing rights. Many of the mortgages were deemed "Alt-A", which is to say that they were the first alternative (Alternative-A) to traditional "prime" mortgages, but were not viewed by Indymac to be "subprime" mortgages.

A distinct division within Indymac was the Homebuilder Division ("HBD"). HBD made large loans to home developers, who then repaid the principal and interest by selling the newly-built single family residences or condominiums. These were loans that were typically $5 million or more. They consisted of acquisition ("land") loans, acquisition and development ("A&D") loans, acquisition, development and construction ("AD&C") loans, or construction loans. The builders would draw down

the loan proceeds in stages as work progressed on the houses or condominiums. When the houses or condominiums were sold, the loans would be repaid. The loans typically were for relatively short periods of time, such as eighteen months or two years. The loans were backed by equity in the project and, typically, the personal guarantees of the builders.

Each loan was individually underwritten by account officers and credit officers in HBD. The loans were then approved by a "junior loan committee" consisting of Van Dellen, Shellem and Koon; later Rothman served on the committee in place of Koon. Todd Camp, Senior Credit Administrator, was the de facto successor to Shellem. Certain loans were approved by a "senior loan committee" consisting of Van Dellen, Indymac President Richard Wohl and, nominally, Indymac CEO Michael Perry, who did not actually participate. The membership of Van Dellen, Shellem, Koon and Rothman on the junior loan committee is ultimately the basis for their being named as defendants.

The Complaint (Docket 1) is 312 pages long and contains 68 separate counts in 798 paragraphs, plus the prayer. Count 1 alleges a general failure of the HBD business model, including the purported negligence of not halting production in early 2006. Counts 2 through 67 make allegations about specific loans. Count 68 alleges the purported negligence of making additional loans. These claims for relief are preceded by a 24-page screed of the purported (and fantastical) failings of the defendants in general; this lengthy preface presumably serves as the basis for Count 1 and as an explanation as to why the individual loans were negligently underwritten and granted.

As to the individual loans, here is a list of the typical allegations that are made:
- Approving loans without sufficient collateral;
- Negligently approving loans where one or more of the sources of repayment of the loan were not likely to be sufficient to fully recover the debt;

- o Negligently approving loans that violated laws/regulations or the Bank's internal policies;
- o Approving loans to borrowers who were not known to be credit worthy;
- o Approving loans without adequate financial information;
- o Approving loans without adequate appraisals;
- o Permitting loans to be made without taking the proper steps to insure that the loan proceeds would be used in accordance with the loan application and failing to control the disbursement of loan proceeds;
- o Permitting loans to be renewed or extended to borrowers who were not credit worthy;
- o Approving loans to be made outside the normal and prudent trade areas of the bank;
- o Expanding HBD despite weakening market conditions;
- o Approving loans in a high concentration of loans in the same market;
- o Approving loans where the borrower had a high concentration of property in the same market; and
- o Approving loans where there was very little likelihood of the loan repaying within the terms of the loan.

The purported damages are in excess of the $80 million available under the "Tower 2" Directors and Officers Polices. The insurance coverage in this case is explained in the Motion to Continue All Deadlines by 60 Days, being heard on the same day as this Motion.

**B.    The Status Conference.**

As of last February, the parties seemed in agreement that it was not practical or even possible to litigate all of the counts in the Complaint. The FDIC submitted the following to this Court in the Updated Joint Rule 26(f) Report and Proposed Discovery Plan dated February 18, 2011(Docket 44), at 3:24 to 4:16:

"**O.    Trial Estimate**

"The parties now request a proposed trial date of September 11, 2012.  Plaintiff proposes that the loan relationships listed below be severed and tried in phase 1 of the trial, which Plaintiff estimates will require approximately 50 court days.  Defendants are considering this proposal and will be prepared to further discuss it at the scheduling conference.  In addition, the parties will discuss with the Court the manner and means by which a phase 1 trial would proceed.

1.  Christopherson Homes:  Count 14.
2.  Corinthian Homes:  Counts 9, 10, 11, 12, and 13.
3.  Fiesta Development:  Counts 2, 3, and 4.
4.  J.P. Eliopulos Enterprises, Inc.: Counts 34 and 35.
5.  Mountain View Bravo:  Counts 54, 55, and 56.
6.  Neumann Homes:  Count 37.
7.  Pacific Century Homes:  Count 59.
8.  Pacific Pride Communities: Count 57.
9.  Reynen & Bardis:  Counts 26, 27, 28, 29, 30, and 31.
10. Dr. Gansean Vishvabharathy:  Counts 15 and 16."

(Declaration of Robert L. Corbin ("Corbin Decl."), Ex. A).

At the status conference on February 28, 2011, this Court had the following colloquy with counsel:

> THE COURT:  Well, I always appreciate a good laugh, but I don't have 50 days to try, if you mean, Phase 1.  I don't have 30 to 35 days either, so you're going to have to sit down and figure out how to get this organized in a way that it can be resolved without so much trial time.
>
> In that regard, let me ask you how you came up with the list of matters that you thought you might want to start with?

1   MR. LONG: Your Honor, plaintiff chose those matters, ten borrower
2   relationships, based upon the ones that we felt were the strongest and also
3   based upon attempting to prove a set of damages that would match what we
4   believe the available insurance limits are. We believe that it would be very
5   unlikely that there would ever be any trial beyond phase 1.
6   THE COURT: I see. So your thought is then that the rest of them are
7   going to be dropped once you've exhausted that coverage?
8   MR. LONG: Yes, your Honor. Once coverage has been exhausted
9   and assuming there are no other available assets, which we believe there
10  will not be.
11  THE COURT: And it makes no difference to the plaintiff or anyone
12  else how you get the judgment, as long as you get the maximum amount of
13  insurance proceeds?
14  MR. LONG: Well, I think that's correct; I mean, unless we discover
15  there's some assets here other than insurance proceeds, which we don't
16  believe there are. Our primary goal is to maximize our recovery.
17  THE COURT: The victim is IndyMac. There is no other place that
18  the insurance proceeds – no other claim to those proceeds?
19  MR. LONG: No. There are multiple claims to the insurance proceeds,
20  and we have separately filed a declaratory relief action in the state court to
21  address that.
22  THE COURT: Right.
23  MR. LONG: So there are multiple competing claims so we obviously
24  want a trial date because all of us are going to be in a race to judgment.
25  THE COURT: Well, I know the Defense won't like the question, but
26  what about the individuals?
27  MR. LONG: In what sense, your Honor?
28

6

Corbin,
Fitzgerald &
Athey LLP

DEFENDANTS VAN DELLEN AND ROTHMAN'S MOTION TO NARROW THE CASE FOR TRIAL

1  THE COURT: Well, is that it? If they don't have any insurance, they
2  are not liable?
3  MR. LONG: If they don't have any insurance, they're liable, but I
4  think their assets are not likely to be a significant portion of the recovery
5  here. I haven't conducted financial discovery of the individuals, but
6  IndyMac is not a situation where the officers were selling off stock. At its
7  peak, they appear to have not done that.
8  THE COURT: You just think they were negligent and otherwise
9  breached their duties?
10  MR. LONG: That's correct.
11  MR. FITZGERALD: Your Honor, on the Court's point about these
12  particular loans, Mr. Behre and I are in discussions with the Plaintiff about
13  whether these loans should be a Phase 1, and if we do we agree to that on
14  whether the remaining things should be dismissed pursuant to Rule 41, I
15  think we will – if the Court will hold off on ordering that today, I think we
16  will reach agreement very soon.
17  You know, Mr. Long has pointed out that it's unlikely there would be
18  a further trial. In fact, it's clear there wouldn't be a further trial, in which
19  case we believe that our clients, the individual defendants, should have the
20  advantage of having that be made clear and having, pursuant to Rule 41, the
21  other counts be dismissed, and it's those precise terms that we're
22  negotiating now with the FDIC.
23  (Corb. Decl., Ex. B [Transcript 02/28/11 at 3:14 to 6:5 (Docket 48)]).
24  Regrettably, the parties have not been able to agree on a joint proposal to
25  submit to this Court. The parties have sparred over this issue since February
26  28, 2011, but have not reached an agreement.

# III.

# THIS COURT SHOULD NARROW THE CASE

**A.     This Court has the Authority to Narrow the Case or Order the Parties to Do So.**

Multiple grounds exist for this Court to narrow the case or order the parties to do so.  Specifically, this Court has the explicit authority to bifurcate this action into separate trials:

> **Separate Trials.**  For convenience, to avoid prejudice or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.  When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed. R. Civ. P. 42(b); *De Anda v. City of Long Beach*, 7 F.3d 1418, 1421 (9th Cir. 1993) (district court has authority to order separate trials of particular claims).

This Court has the same authority as part of its right to manage pretrial proceedings, Fed. R. Civ, P. 16(a), and its inherent right to manage its calendar.  This Court could also formally sever certain claims into separate lawsuits.  Fed. R. Civ. P. 21.  As a practical matter, no party disputes this Court's authority to narrow the case.

An ongoing issue is whether "Phase 1" would in fact be Phase 1 or "Phase Only."  As a practical matter, undersigned counsel believe that any further phase would be unlikely.  If the FDIC prevails and wins substantial damages that would exhaust most or all of the Tower 2 insurance policies, then there would be no need for another trial.  If the defendants obtain a defense verdict or if damages were nominal, then the FDIC would almost certainly not pursue another trial or would perhaps accept a modest settlement.  Undersigned counsel remain of the view, which they have held

for over a year, that the FDIC should in fairness dismiss without prejudice those counts not included in Phase 1.  Fed. R. Civ. P. 41(a)(2).

**B.     This Court Should Exercise its Discretion to Narrow the Case.**

Based on its views at the status conference, this Court intends for this case to be presented in less than 30 trial days.  The parties have separate proposals to do so:

*Van Dellen and Rothman* propose that Phase 1 be limited to five loan relationships.  The FDIC would select two, Van Dellen and Rothman would select one, Sheehan and Koon would select one, and the parties would jointly select a fifth.  The criteria for selecting the fifth loan would be (1) its creating a representative sample, when viewed with the other four loans, of the 66 total loans; and (2) the amount of time needed to try it.  If the parties could not agree, then the choice would be made by the magistrate judge.

*Shellem and Koon* propose that the FDIC be ordered to select five of the ten loan relationships that it proposed in February.  Shellem and Koon believe that the FDIC as plaintiff has both the right and the obligation to make this selection.

*The FDIC* discussed its position on December 20, 2011, at a telephonic conference of counsel.  The FDIC believes that all counts in the complaint can be presented in a reasonable amount of time by extensive use of expert testimony.  The FDIC intends to explicate its position in its opposition to this Motion.  Van Dellen and Rothman will allow the FDIC to do so, and then explain the defects of this proposal in their reply.  For now, they make two points:  (1) this approach will almost certainly prove to be both unfair and unworkable; and (2) even if this Court disagrees and chooses this approach, it would in itself justify the granting of the continuance being requested in the companion motion.

The Van Dellen/Rothman proposal is both fair and practical.  It would ensure that the selected loans would a representative sample.  More important, however, than *which* proposal is selected is that a proposal *be* selected.  It is impossible to prepare this case for trial unless the scope of the trial is delineated.  Through no other means

9

can this Court and the parties "secure the just, speedy, and inexpensive determination" of this action.  Fed. R. Civ. P. 1.

## IV.

## **CONCLUSION**

For the foregoing reasons, this Court should order a Phase 1 trial to include five loan relationships selected as proposed by Van Dellen and Rothman.  In the alternative, this Court should select another proposal.  In either case, this Court should further order the parties to meet and confer on the details within one week of the entry of the minute order on this Motion and report to this Court in writing within two weeks of the entry of the minute order.

Dated:  December 21, 2011.

Respectfully submitted,

CORBIN, FITZGERALD & ATHEY LLP


By:  _____/s/_____
           Robert L. Corbin
Attorneys for Defendants
Scott Van Dellen and William Rothman
