ROBERT L. CORBIN (State Bar No. 75445)
MICHAEL W. FITZGERALD (State Bar No. 127164)
JESSICA TULK (State Bar No. 266258)
CORBIN, FITZGERALD & ATHEY LLP
601 West Fifth Street, Suite 1150
Los Angeles, California 90071-2024
Tel: (213) 612-0001
Fax: (213) 612-0061
rlcorb@corbfitzlaw.com
mwfitz@corbfitzlaw.com
jtulk@corbfitzlaw.com

Attorneys for Defendants
SCOTT VAN DELLEN and WILLIAM ROTHMAN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR INDYMAC BANK, F.S.B.,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT VAN DELLEN, *et al.*,<br><br>Defendants. | Case No. CV 10-4915 DSF (SHx)<br>The Honorable Dale S. Fischer<br><br>**DEFENDANTS SCOTT VAN DELLEN AND WILLIAM ROTHAMN'S REPLY MEMORANDUM TO NARROW THE CASE FOR TRIAL**<br><br>Date: January 23, 2012<br>Time: 1:30 pm<br>Place: Courtroom 840 |

---

Corbin, Fitzgerald & Athey LLP

DEFENDANTS VAN DELLEN AND ROTHMAN'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO NARROW THE CASE FOR TRIAL

# I.

# INTRODUCTION

This Homebuilder Division ("HBD") action arises from a Complaint that is 309 pages long and contains 68 counts. Virtually all of the counts focus on specific loans. At the status conference, this Court made clear that it wanted counsel to work together to narrow the scope of the case for trial. Defendants Scott Van Dellen and William Rothman now ask this Court to command the parties in specific terms to delineate the scope of the case for trial. Messrs. Van Dellen and Rothman have made a specific proposal. Defendants Kenneth Shellem and Richard Koon have made a slightly different proposal. Quite recently, plaintiff Federal Deposit Insurance Corporation ("FDIC") has made a vague proposal – or more accurately, an unsupported assertion – that it can try all counts in a reasonable amount of time.

The parties agree that no counts have been dismissed from the Complaint. Messrs. Van Dellen and Rothman by this motion do not seek to dismiss any counts. The parties further agree that this Court has discretion to decide how the case will be tried.

This Court should adopt either of the defendants' proposals as it thinks most just and then order the parties to act accordingly. The proposal of the FDIC, if it can be called that, is unworkable. No matter how extensive the use of experts, it is not possible to present all the allegations in the Complaint in one trial in a reasonable amount of time. As demonstrated below, any fair trial that allowed the defendants to be heard would take far more than the 20 or 25 days that this Court is in a position to grant to the parties at one time.

The FDIC objects that it would take seven trials to obtain complete relief. That is not realistic. That is not how litigants and insurance companies act in the real world. The FDIC further objects that it now intends to try to "bust the policies" and obtain more than the Tower Two policy limits. Implicitly, the argument is that the FDIC has

an interest in obtaining a judgment for as much as possible, far in excess of the $80 million in the Tower Two policies. While the FDIC is free to change its strategy, it cannot unilaterally impose on this Court a trial long enough to achieve its aim.

Any limitations on the FDIC are a direct result of its own litigation tactics. This entire HBD action is a contrivance to obtain a pay-out of the Tower Two policies. This action was structured loan-by-loan in order to separate its allegations from the allegations in other Indymac cases involving the residential mortgages. Each count involves its own mini-trial on that specific loan, with its own peculiarities. That litigation approach is perhaps helpful to the FDIC in its insurance strategy but it requires a trial considerably longer than the amount of time that this Court has available. Now the FDIC must abide by the choice it made.

Accordingly, Messrs. Van Dellen and Rothman respectfully request that this Court grant their motion and command the parties to structure the case for trial. If this Court disagrees and intends to allow the FDIC to present all counts, then they respectfully request a continuance of four to six months. This alternative point is discussed in the Motion to Continue All Deadlines for 60 Days and its Reply Memorandum.

## II.

## THIS COURT SHOULD GRANT THE MOTION

As stated in the Motion, the FDIC made a proposal to this Court for a Phase One trial. This Court indicated that this Phase One would be too ambitious:

> THE COURT: Well, I always appreciate a good laugh, but I don't have 50 days to try, if you mean, Phase 1. I don't have 30 to 35 days either, so you're going to have to sit down and figure out how to get this organized in a way that it can be resolved without so much trial time.
>
> In that regard, let me ask you how you came up with the list of matters that you thought you might want to start with?

1  MR. LONG: Your Honor, plaintiff chose those matters, ten borrower
2  relationships, based upon the ones that we felt were the strongest and also
3  based upon attempting to prove a set of damages that would match what we
4  believe the available insurance limits are. We believe that it would be very
5  unlikely that there would ever be any trial beyond phase 1.
6  THE COURT: I see. So your thought is then that the rest of them are
7  going to be dropped once you've exhausted that coverage?
8  MR. LONG: Yes, your Honor. Once coverage has been exhausted
9  and assuming there are no other available assets, which we believe there will
10 not be.
11 THE COURT: And it makes no difference to the plaintiff or anyone
12 else how you get the judgment, as long as you get the maximum amount of
13 insurance proceeds?
14 MR. LONG: Well, I think that's correct; I mean, unless we discover
15 there's some assets here other than insurance proceeds, which we don't
16 believe there are. Our primary goal is to maximize our recovery.
17 THE COURT: The victim is IndyMac. There is no other place that
18 the insurance proceeds – no other claim to those proceeds?
19 MR. LONG: No. There are multiple claims to the insurance proceeds,
20 and we have separately filed a declaratory relief action in the state court to
21 address that.
22 THE COURT: Right.
23 MR. LONG: So there are multiple competing claims so we obviously
24 want a trial date because all of us are going to be in a race to judgment.
25 THE COURT: Well, I know the Defense won't like the question, but
26 what about the individuals?
27 MR. LONG: In what sense, your Honor?
28

3

1  THE COURT: Well, is that it? If they don't have any insurance, they
2  are not liable?
3  MR. LONG: If they don't have any insurance, they're liable, but I
4  think their assets are not likely to be a significant portion of the recovery
5  here. I haven't conducted financial discovery of the individuals, but
6  IndyMac is not a situation where the officers were selling off stock. At its
7  peak, they appear to have not done that.
8  THE COURT: You just think they were negligent and otherwise
9  breached their duties?
10  MR. LONG: That's correct.
11  MR. FITZGERALD: Your Honor, on the Court's point about these
12  particular loans, Mr. Behre and I are in discussions with the Plaintiff about
13  whether these loans should be a Phase 1, and if we do we agree to that on
14  whether the remaining things should be dismissed pursuant to Rule 41, I
15  think we will – if the Court will hold off on ordering that today, I think we
16  will reach agreement very soon.
17  You know, Mr. Long has pointed out that it's unlikely there would be
18  a further trial. In fact, it's clear there wouldn't be a further trial, in which
19  case we believe that our clients, the individual defendants, should have the
20  advantage of having that be made clear and having, pursuant to Rule 41, the
21  other counts be dismissed, and it's those precise terms that we're negotiating
22  now with the FDIC.
23  (Transcript 02/28/11 at 3:14 to 6:5 (Docket 48), attached as Exhibit B to the
24  Declaration of Robert L. Corbin filed on December 21, 2011).
25  The defendants did not disagree with the concept of a Phase One, as the above
26  colloquy shows. The defendants believed that the other counts should be dismissed
27  without prejudice, but this Court did not order that. That was the background to the
28

4

remarks of undersigned counsel and to a further colloquy with counsel for Messrs. Shellem and Koon that the FDIC quotes in its Opposition at page 2, lines 15-19. (Transcript at 10:15-21).  Again, the FDIC correctly understands this Motion to request a separation or severance of counts, not involuntary dismissal.

The defendants since the status conference have repeatedly requested that the FDIC delineate a new Phase One.  For example, there was a discovery dispute between the parties in July in which there was a chicken-and-the-egg dispute:  Should the defendants have to answer certain interrogatories as to each loan before the case was narrowed, or should the FDIC get the discovery responses in order to narrow the case?  After that dispute, which was never fully resolved, the parties continued to discuss the issue of Phase One.  For example, the parties held a telephonic meet-and-confer on October 28, 2011 in regard to this Motion.  The basic position of the FDIC was that it would consider a joint proposal from the defendants.  As indicated, the four defendants were unable to reach agreement on precisely the same proposal, but the differences between the proposals were small.  It seemed odd that the FDIC would be so obdurate and not agree to one of the proposals or make its own counter-proposal.

The reason for the FDIC's obduracy is now clear.  The FDIC has adopted a different strategy.  The FDIC wants to "bust the policies" and obtain a judgment greater than the $80 million that is the total of the Tower Two policies (one primary and seven excess, each for $10 million).  Therefore, the FDIC now wants to have all counts presented at one trial in September.   The FDIC believes that it can present its entire case in a reasonable time (which we presume the FDIC views as 20 to 25 days) through heavy reliance on experts.

Counsel for the FDIC hinted on December 7, 2011, that it had a new approach to the case.  Counsel shared this approach on December 20, 2011, at a further telephonic meet-and-confer on this Motion.  The response of counsel was the same then as it is in this Reply:  The proposal seems unfair and unworkable.  Counsel for Messrs. Van

Dellen and Rothman thought that the FDIC would describe this trial presentation in explicit terms in its Opposition. Rather, it has simply made an unsupported assertion that it can try its intended case.

It is not plausible that the FDIC could present its entire case in 20 to 25 days. The issue as to Counts 2 through 67 is whether the members of the loan committee (essentially, the four defendants) negligently approved specified loans. The underwriting for the loans was contained in various documents, which primarily included a voluminous Credit Approval Memorandum ("CAM") that is typically 40 or more pages long, and in turn summarizes considerable financial information. The purported evidence of negligence is often whether certain specific information was or was not included at specific portions of the CAMs. The administrative and civil depositions of the FDIC routinely include extremely lengthy reviews of the CAMs.

No matter how brief his or her testimony, an expert would have to explain the following as to *each* loan, among many other things:

- Where the housing development was;
- The details of the intended development – single-family residences, condos, number of units;
- The loan terms (interest rate, repayment schedule, type of loan (*e.g.*, "acquisition," "acquisition and development," or "acquisition, development and construction");
- Facts related to that specific housing market;
- Articulation of the specific acts constituting the alleged negligence;
- An articulation of why those acts constitute negligence in terms of the standard of care;
- A showing of proximate cause, including a discussion of why the loan defaulted; and
- Damages.

The expert would be subject to cross-examination on each of the loans. The defendants would then have the right to put on their own experts, percipient witnesses as to the loans, and the defendants themselves as to why they believed the underwriting was adequate.

Let us assume, unrealistically, that all this testimony took three hours per loan. Even that unrealistic estimate indicates approximately 198 hours of trial time. By itself, this approach would consume more time than this Court has available.

The actual trial would be far longer. The FDIC has made wide-ranging allegations about HBD and Mr. Van Dellen's management that, presumably, it believes support the specific allegations of negligence. (*See, e.g.,* Complaint, ¶¶ 28, 31, 33, 42, 43, 53, 54). In Count 1, the FDIC has also made a wide-ranging allegation about the defendants' failure to foresee the decline in the market. The various experts would have to testify about their background, experience, and the facts through which they define the standard of care. A jury would have to be chosen and opening statements and closing arguments would have to be given. In sum, it is not plausible to believe that the FDIC's proposal would work.

Apart from its implausibility, the FDIC's proposal is not necessary. Even if the FDIC has changed its strategy and wants to "bust the policies," then a Phase One would be sufficient to inform the parties and the carriers of what would happen at future trials. It simply would not be necessary to have seven jury trials.

It is true, as the FDIC asserts, that if two or more trials actually took place, then there would be some overlap on the background information. (Opposition at 6:16-26). But that was equally true in February and the FDIC at that time was willing to agree to a Phase One proposal. More important, it is a direct result of the FDIC's calculated approach to base its Complaint on at least 66 separate loans. While perhaps providing strategic benefits as to Tower Two, that approach results in a trial so unwieldy that it is unfair to expect this Court to provide the time or, indeed, to expect one jury to consider

66 loans at once.  To the extent that the FDIC is prejudiced at all, it is a prejudice of its own making.

## III.
## CONCLUSION

For the foregoing reasons, this Court should grant this Motion and order the parties immediately to define the scope of a Phase One trial on such terms as this Court deems just.

Dated:  January 9, 2012.

                                             Respectfully submitted,

                                             CORBIN, FITZGERALD & ATHEY LLP

                                             By:  _____/s/_____
                                                        Michael W. Fitzgerald
                                           Attorneys for Defendants
                                           Scott Van Dellen and William Rothman