UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

| Case No. | CV 10-4915 DSF (SHx) | Date | 2/6/12 |
|---|---|---|---|
| Title | Federal Deposit Insurance Corp. v. Scott Van Dellen, et al. | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge |
|---|---|

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order DENYING Defendants Shellem and Koon's Motion for Sanctions for Spoliation of Evidence (Docket No. 82) and DENYING as Moot Plaintiff's Motion to Strike Portions of Defendants' Reply and Declarations Filed in Support Thereof (Docket Nos. 106, 108, 109, 110)

Plaintiff Federal Deposit Insurance Corporation (FDIC), as receiver for IndyMac Bank, F.S.B. (IndyMac), brought suit pursuant to 12 U.S.C. § 1821(d)(2) against Defendants Scott Van Dellen, Richard Koon, Kenneth Shellem, and William Rothman, former officers of IndyMac.  The FDIC claims that Defendants were negligent and breached fiduciary duties by approving loans made by IndyMac's Homebuilder Division (HBD), and by pressing to expand HBD's loan volume despite knowledge of the sharp economic downturn in real estate.  Defendants Shellem and Koon (moving Defendants)[1] seek sanctions against the FDIC, claiming that it failed to preserve evidence relevant to their defense.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

HBD provided land acquisition and construction loans to homebuilders.  (Compl. ¶ 4.)  In July 2008, HBD employed 100 individuals in seventeen offices in eleven states.

---

[1] Moving Defendants assert in their Reply that Defendants Van Dellen and Rothman's electronic documents were collected by the FDIC, and therefore "they are in a different posture" from moving Defendants regarding the motion for sanctions.  (Defs.' Reply at 1 n.2.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

(Behre Decl. Exs. 3-4.) HBD's California offices included the Lake building, Foothills building, and the Pasadena headquarters, where moving Defendants had their offices. (Shamalian Dep. at 16-17.) Within HBD, potential loans were first considered by loan officers who prepared detailed credit approval memoranda (CAMs) regarding the creditworthiness of the client. (Marquardt Dep., Farkas Decl. Ex. 4 at 86.) These CAMs were eventually submitted to the Junior and Senior Loan Committees for approval. (Id.) CAMs were intended to be "stand-alone" documents containing all of the information required for the loan committee to make its decision.[2] (Id.; Beck Dep., Farkas Decl. Ex. 5 at 59; Shellem Dep., Farkas Decl. Ex. 6 at 45; Shamalian Dep. at 10.) After a CAM was prepared, it was submitted to the credit department of review. (Shellem Dep. at 36; Koon Dep., Farkas Decl. Ex. 7 at 62.) A credit officer would verify the details of the CAM, require any necessary changes, and prepare a credit review memorandum. (Shellem Dep. at 36; Koon Dep. at 62.) The loan would then be submitted to committee for approval. Defendant Koon was HBD's chief lending officer (CLO) from 2001 until July 15, 2006. (Compl. ¶ 14.) He was a member of the Junior Loan Committee from 2001 until 2008. (Id.) Defendant Shellem was HBD's chief credit officer (CCO) from 2002 until November 15, 2006. (Id. ¶ 15.) Shellem was a member of the Junior Loan Committee during this time. (Id.) Moving Defendants were involved in the approval of more than 40 of the loans that are the subject of the FDIC's action. (Id. ¶¶ 14-15.)

IndyMac was closed by federal regulators on July 11, 2008 and placed into a conservatorship.[3] (Hall Dep., Farkas Decl. Ex. 1 at 8.) The FDIC commenced an investigation to determine whether it should pursue litigation. (Id. at 8-9, 86; Bovenzi Dep., Behre Decl. Ex. 2 at 43 (stating that the FDIC "always does investigation of a failed bank to see if there is a basis for lawsuits").) The investigation, headed by Stephen Hall, included the collection of both hard-copy and electronic documents.[4] (Hall Dep. at

---

[2] CAMs were prepared based on documents such as an appraisal, cost review, environmental report, and borrower financials. (Beck Dep. at 38, 42.)

[3] At the time IndyMac was seized, the outstanding balance on HBD's portfolio was $898,573,743. (Compl. ¶ 5.) The FDIC alleges losses in excess of $5 million. (Id.)

[4] Hall testified that he believed individuals involved in the closing were given the chapter of the FDIC's Investigation Procedures Manual (IPM) dealing with closing procedures. (Hall Dep. at 19.) The IPM was a "guideline" that indicated the types of information investigators should look for. (Id. at 20, 118.) The IPM directed investigators to perform searches for hard-copy and electronic documents. (Farkas Decl. Ex. 3.) Examples of relevant documents were "loan documentation or any other data which should be located in the credit or collateral files," such as copies of notes, titles, financial statements, checks, and legal documents, (id. at 81), board and committee minutes, officer and director insurance polices, loan and operating

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

7.) Hall and a team of sixteen to eighteen others were in charge of gathering documents from all IndyMac divisions, including HBD. (Id. at 28-29.) Hall searched the Lake building, Foothills building, and main Pasadena headquarters – having determined that these locations were the most likely to contain documents critical to the investigation. (Id. at 108-09.) Approximately 700 boxes of documents were seized.[5] (Id. at 124.) No documents were collected from offices outside California. (Id. at 109.)

Hall also oversaw the collection of electronic data by contractor Deloitte. (Id. at 34.) Based on IndyMac's organizational chart,[6] Hall generated a list of approximately 120 individuals who might have information relevant to IndyMac's losses. (Id. at 36, 44.) Information was taken from the hard drives of these individuals' desktops and laptops. (Id. at 36-37.) It appears that only four of these individuals were HBD employees.[7] (Defs.' Mot. at 7 & n.8.)

Electronic data was also collected from the T-drive, HBD's shared hard drive. (Hall Dep. at 37-38.) Three HBD employees (including two credit officers and a workout officer in Asset Management) testified that there was a standing policy of saving all relevant loan documents on the T-drive.[8] (Camp Dep., Farkas Decl. Ex. 8 at 131; Boggs

---

polices, (id. at 82), and information that "might prove critical to an investigation arising out of a financial institution (FI) failure," (id. at 77). Hall's collection efforts targeted IndyMac divisions that had experienced significant loss; also, based on an IndyMac organizational chart, Hall's team selected employees (such as executives) who likely would have information relating to the causes of the bank's failure. (Hall Dep. at 15, 44-45, 94.)

[5] The documents collected include minutes of loan committee meetings and 160 boxes of loan files. (Hall Dep. at 28-29; Farkas Decl. Ex. 19; Pl.'s Opp'n at 1.)

[6] Moving Defendants claim these organizational charts were "undated and incomplete." (Defs.' Mot. at 5.) One of the charts produced to Defendants is dated. (Behre Decl. ¶ 5, Ex. 3.) Defendants do not explain how the charts are incomplete.

[7] Moving Defendants provide a "list of individuals from whom the FDIC collected electronic documents, produced to Defendants Shellem and Koon by the FDIC on October 6, 2009." (Behre Decl. ¶ 11, Ex. 9.) Four of these individuals (including Defendants Van Dellen and Rothman) are HBD employees, as indicated in one of IndyMac's contact lists. (Behre Decl. Ex. 5.)

[8] Moving Defendants claim that no such policy existed. (Defs.' Mot. at 7 n.8.) With their Reply, moving Defendants filed declarations of two HBD employees stating that they did not save all *email correspondence* and *items received electronically* to the T-drive. (Boggs Decl. ¶ 7; Kazanchyan Decl. ¶ 7.) One of these employees, David Boggs, stated in his deposition that "[e]verything was stored on the T-drive." (Boggs Dep. at 61.) Boggs' declaration states

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

Dep., Farkas Decl. Ex. 10 at 61; Kanani Dep., Farkas Decl. Ex. 11 at 37-38, 62.) The FDIC claims that the T-drive contains the CAMs for every loan that is a subject of the action. (Pl.'s Opp'n at 1.)

In November 2008, while Hall's investigation was ongoing, the FDIC issued a litigation hold to its corporate employees instructing them to preserve "all hard-copy and electronic materials relating to the IndyMac Entities." (Gill Decl. Ex. 1 at 4.) In March 2009, the bank was sold to One West. (Farkas Decl. Ex. 21.) Pursuant to the Master Purchase Agreement, One West was obligated to preserve the bank's records for ten years.[9] (Id. § 10.02.)

## II. LEGAL STANDARD

"Spoliation is the destruction or material alteration of evidence, or the failure to otherwise preserve evidence, for another's use in litigation." Surowiec v. Capital Title Agency, Inc., 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011). Sanctions for the spoliation of evidence may be imposed under the court's inherent power to manage its own affairs. Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006). "A party seeking sanctions for spoliation of evidence must prove the following elements: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence." Surowiec, 790 F. Supp. 2d at 1005 (citation omitted). The court's sanctioning power derives from "the need to preserve the integrity of the judicial process." Silvestri v. GMC, 271 F.3d 583, 590 (4th Cir. 2001).

## III. DISCUSSION

Moving Defendants claim that the FDIC's duty to preserve documents arose on the date of IndyMac's closure, if not before. They argue that, due to the FDIC's inadequate preservation efforts, Defendants have been deprived of evidence relevant to their defense.

For the reasons described below, the Court need not decide precisely when the FDIC's duty to preserve was triggered; however, it is not likely that IndyMac's closure

---

that he typically saved all *official* documents on the T-drive. (Boggs Decl. ¶ 7.)

[9] Moving Defendants note that the FDIC sold only some of IndyMac's loans to One West, and therefore only some of IndyMac's records are subject to the preservation requirement. (Defs.' Reply at 10-11.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

on July 11, 2008 was the triggering event. A party's duty to preserve "arises when a party knows or should know that certain evidence is relevant to pending or future litigation." Surowiec, 790 F. Supp. 2d at 1005 (citation omitted). This duty is triggered "not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." Id. (citation omitted); see also Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (finding that the duty to preserve was triggered when the plaintiff's fellow employees believed it was likely that the plaintiff would sue); Henkel Corp. v. Polyglass USA, Inc., 194 F.R.D. 454, 456 (E.D.N.Y. 2000) (finding that the duty to preserve was triggered when the plaintiff knew the identity of a product involved in a fire and "knew that it was likely to commence litigation against [the product's] manufacturer"). Contrary to Defendants' claim, (Defs.' Mot. at 12), the FDIC's investigation and collection of data immediately following IndyMac's closure does not indicate that the FDIC believed litigation against IndyMac was likely. Rather, the evidence shows that the purpose of the investigation was to determine whether a basis for litigation existed. Hall testified that the purpose of the investigation was to "determine if there are any professional liability claims," and that the collection of data occurred prior to "making a decision whether litigation would be filed."[10] (Hall Dep. at 9; see also Bovenzi Dep. at 43.) Moreover, the IPM specifically directs investigators to use the investigation to determine "what potential liability claims exist." (Farkas Decl. Ex. 3 at 75.)

      However, even if the FDIC's preservation duty arose in July 2008, and even if its preservation efforts were deficient,[11] the Court declines to impose sanctions because moving Defendants have not shown that they were deprived of relevant evidence.[12] See

---

[10] As the FDIC points out, moving Defendants blatantly mischaracterize this testimony, (see Defs.' Mot. at 11 (claiming that Hall "admitted that they anticipated litigation prior to the closing of IndyMac")), as well as the testimony of FDIC officer John Bovenzi. (Pl.'s Opp'n at 14.)

[11] The Court notes that FDIC investigators actively pursued preserving hard-copy and electronic documents over the course of six to eight months, and the FDIC issued to its employees a litigation hold on "all hard-copy and electronic materials relating to the IndyMac Entities" in November 2008. (Gill Decl. Ex. 1 at 4.)

[12] As the FDIC points out, (Pl.'s Opp'n at 9), moving Defendants present no evidence that any documents were destroyed or that any electronic data was deleted. See Surowiec, 790 F. Supp. 2d at 1005 (stating that suspension of a document retention/destruction policy is part of the duty to preserve). FDIC counsel stated at oral argument that he did not believe that there was "any policy of routinely destroying documents," and defense counsel did not suggest

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 685 F. Supp. 2d 456, 467 (S.D.N.Y. 2010) ("[O]ur cases make clear that 'relevant' in this context means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence." (quoting Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108 (2d Cir. 2002))). However, in bringing a motion for sanctions for spoliation of evidence, "[t]he innocent party must . . . show that the evidence would have been helpful in proving its claims or defenses – i.e., that the innocent party is prejudiced without that evidence." Id.

Moving Defendants' prejudice claim is based on broad statements that the FDIC failed to gather documents from hundreds of loan officers and credit officers who were intimately involved in making the loans that are the subject of the Complaint. (Defs.' Mot. at 13-17, 20-21.) Defendants claim that the FDIC failed to preserve records of the correspondence engaged in by HBD loan officers during the preparation of loans for Defendants' approval. (Id. at 21.) They also cite the deposition of one HBD loan officer who claimed that his "documents for day-to-day management of the loans" were not collected by FDIC investigators.[13] (Id. at 15 (citing Shamalian Dep.).) However, contrary to moving Defendants' contention, (id. at 21), evidence of the due care of loan officers would not assist Defendants in defending against claims that they negligently approved risky loans. The record shows that Defendants based their approval decisions on the CAMs submitted to the loan committee – not on materials or correspondence relied on by loan officers in preparing the CAMs for submission.

In their motion, moving Defendants make the unsupported assertion that they have

---

otherwise. (Transcript 1/30/12 at 14:11-12.) Hall and Sheehan testified that they were not aware of any documents being destroyed. (Hall Dep. at 111; Sheehan Dep., Farkas Decl. Ex. 2 at 111.)

Further, moving Defendants filed their motion prior to receiving a response to the subpoena served on One West and determining whether relevant documents are in its possession.

[13] With their Reply, moving Defendants filed additional declarations of four HBD employees who state that the FDIC failed to collect documents the employees used in preparing, drafting, and revising CAMs, and in monitoring loans following their approval by the committee. (See Kazanchyan Decl.; Boggs Decl.; Cruzan Decl.; Kanani Decl.) The FDIC moves to strike these declarations as improper because they should have been filed with the motion for sanctions, and do not constitute rebuttal evidence, under Local Rules 7-5 and 7-9. (Docket No. 108.) However, as the Court explains, the declarations do not establish that the FDIC failed to preserve relevant evidence. Because the Court would deny the motion for sanctions even if it considered the employee declarations filed with the Reply, the motion to strike is DENIED as moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

been deprived of communications "between HBD employees and Defendants." (Id.) The only evidence to support this assertion are declarations filed in conjunction with the Reply.[14] Loan officer Cruzan states that she communicated by email with Defendants Shellem and Koon regarding loans, and that she saved relevant emails to a personal working file. (Cruzan Decl. ¶¶ 6-7.) Credit officer Boggs states that he corresponded by email with Defendant Shellem regarding "a [stress test] model to predict loan losses if the market were to decline," and that these emails were not saved to the T-drive. (Boggs Decl. ¶ 8.) Finally, Defendant Koon's former executive assistant, Liz (Boerjan) Lujan stated that she maintained an electronic file of Koon's work product (e.g., scanned copies of handwritten notes on drafts of CAMs) and important email correspondence with loan officers, credit officers, and HBD management, and that this data was not saved to the T-drive. (Lujan Decl. ¶¶ 5-7.) Unlike the other statements in the Reply declarations, these statements directly related to moving Defendants' claim that they have been deprived of relevant evidence. Thus, the declarations clearly should have been filed with the motion for sanctions, and the FDIC seeks to strike them on that basis. However, even if the declarations are considered, moving Defendants have failed to show prejudice. In the case of Lujan, who worked for HBD until March 2009, the evidence may be in possession of One West. Second, although moving Defendants claim that they have been deprived of Cruzan's emails to them regarding loans, this does not detract from the evidence that all information relevant to a given loan's approval was included in the CAM. Although Cruzan's emails might relate to a relevant loan, this does not mean that they contained information that was absent from the CAM. Indeed, this would not stand to reason, as the CAM was provided to all members of the loan committee, some of whom may not have corresponded with Cruzan. Thus, moving Defendants have not shown that the loss of Cruzan's emails (if they have been lost) would impair an analysis of whether moving Defendants exercised due care. Finally, as for Boggs's correspondence regarding the stress test model, moving Defendants fail to indicate how they might be prejudiced by the loss of this narrow set of emails.

## IV. CONCLUSION

The motion for dismissal and monetary sanctions is DENIED. The motions to strike portions of the Reply and declarations filed in support thereof are DENIED as moot. The motion for a jury instruction and request for an evidentiary hearing are DENIED as premature.

---

[14] Each of the relevant declarations was signed before the FDIC filed its Opposition on December 19, 2011.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

IT IS SO ORDERED.