UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**MEMORANDUM**

| | | | |
|---|---|---|---|
| Case No. | CV 10-4915 DSF | Date | 10/30/12 |
| Title | Federal Deposit Insurance Corp. v. Scott Van Dellen, et al. | | |

| | |
|---|---|
| Present: The Honorable | DALE S. FISCHER, United States District Judge |

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**   (In Chambers) Order GRANTING Plaintiff FDIC's Motion for Determination of Good Faith Settlement (Docket No. 353)

### I.   INTRODUCTION

The FDIC moves for a finding that its proposed settlement with Defendant William Rothman is in good faith pursuant to California Code of Civil Procedure Section 877.6. (FDIC Mot. for Determination of Good Faith Settlement (FDIC Mot.); Docket No. 353.) Rothman is a former chief lending officer and regional manager of the Homebuilder Division (HBD) of Indymac Bank, F.S.B. (the Bank). (Long Decl. ¶ 4; Docket No. 353.) Defendant Scott Van Dellen does not oppose the FDIC's motion. (Docket No. 416.) Defendants Kenneth Shellem and Richard Koon oppose the motion - asserting that the amount of the settlement is "impermissibly disproportionate to Rothman's potential percentage of liability." (Shellem and Koon Opp. 2; Docket No. 417.)

The Settlement Agreement was reached on September 10, 2012 as a result of arm's-length negotiations during a mediation between the FDIC and Rothman. (Long Decl. ¶ 14.) The Agreement provides:

1.   The FDIC agrees to accept $4,750,000 in settlement of all the FDIC's claims against Rothman, payable from the 2008–2009 Director and Officer (D&O) Insurance Policies (Settlement Amount). (Long Decl. ¶ 15.)

2.   Rothman agrees to assign to the FDIC any and all rights, claims, and causes of action that he has or may have against the 2008–09 Insurers arising from the facts and circumstances that form the basis of the lawsuit in XL Specialty Insurance Co. v. Michael Perry, No. CV 11-02078-RGK (JCGx), which includes the right to participate in the appeal of the case. (Long Decl. ¶ 16.)

3.   The FDIC agrees to pursue collection of the Settlement Amount from the 2008–2009 Policies, and "not from any other personal assets of Rothman." (Long Decl. ¶ 17.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**MEMORANDUM**

4. The FDIC agrees not to pursue any known or unknown claims against Rothman, including but not limited to any known or unknown claims arising out of or related to the FDIC's claims and in the event the FDIC has brought or brings in the future any action against a person or entity not a party to this Agreement (Third Party), the FDIC agrees not to seek more than the Third Party's aggregate proportional share of liability from the Third Party. (Long Decl. ¶ 18.)

5. The Agreement is contingent on a determination that the settlement is in good faith pursuant to California Code of Civil Procedure section 877.6. (Long Decl. ¶ 19.)

In XL Specialty Ins. Co. v. Michael Perry, No. CV 11-02078-RGK (JCGx), 2012 WL 3095331, at *1–3 (C.D. Cal. June 27, 2012), some of the Bank's D&O insurers obtained a declaration that six underlying actions, including this case, are not within the scope of 2008–2009 Policies (Tower 2 Policies) because they were excluded as "interrelated wrongful acts."

## II.   LEGAL STANDARD

This Court's good faith settlement determination is governed by California Code of Civil Procedure section 877.6. Mason and Dixon Intermodal, Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056, 1060 (9th Cir. 2011). Section 887.6 provides in part:

> (b) The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response, or the court may, in its discretion, receive other evidence at the hearing.
>
> (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.
>
> (d) The party asserting the lack of good faith shall have the burden of proof on that issue.

In evaluating a settlement, the Court must take into account: (1) whether the settlement is "a rough approximation of plaintiff['s] total recovery and the settlor's proportionate liability"; (2) "the amount paid in settlement"; (3) "the allocation of settlement proceeds among plaintiffs"; (4) "a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial"; (5) "the financial conditions and insurance policy limits of settling defendants"; and (6) "existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants." Tech-Bilt, Inc. v. Woodward-Clyde & Assocs., 38 Cal. 3d 488, 499. The factors are nonexclusive. Cahill v. San Diego Gas & Elec. Co., 194 Cal. App. 4th 939, 959 (2011). The Court's evaluation must "be made on the basis of information available at the time of settlement." Id. at 499.

The "defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." Id. (citation omitted). "The party asserting the lack of good faith, who has the burden of proof on that issue . . . should be permitted to demonstrate, if he can, that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." Tech-Bilt, 38 Cal. 3d at 499–500.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**MEMORANDUM**

## III.   DISCUSSION

A.   **The Settlement Amount is a Rough Approximation of Plaintiff's Total Recovery and the Settlor's Proportionate Liability**

The FDIC estimates Rothman's potential proportionate share of the damages arising out of Defendants' allegedly negligent lending practices at approximately 10% of the total claimed damage amount of approximately $200 million.  (FDIC Mot. 7; Long Decl. ¶ 29–30).  This percentage is lower than that of other Defendants because Rothman approved fewer loans, and loans that suffered lesser losses.  (Id.)  The FDIC contends Rothman was involved in the approval of only nine of the 23 loans at issue in Phase 1 of the trial and that the FDIC's total damages for all Defendants for these nine loans amounts to approximately $52,273,000.  (FDIC Mot. 7; Long Decl. ¶ 31–32.)  The FDIC estimates damages attributable to Rothman[1] for these nine loans at approximately $18,995,000.  (FDIC Mot. 7; Long Decl. ¶ 33.)  Thus, the Settlement Amount of $4.75 million represents approximately 25% of Rothman's maximum potential liability.  This 25% figure represents the low end of estimates, however, as the amount of damages (if any) is disputed.

The $200 million figure comes from the FDIC's damages expert, Scott Carnahan.[2]  Defendants' damages expert, Avram S. Tucker, on the other hand, estimates damages at $36 to $38 million including interest.[3]  Depending on the proper measure of damages, Rothman's Settlement Amount represents between 25% of his estimated total liability using Carnahan's measurement, and a significantly higher percentage, using Tucker's measurement.[4]

Under California law, "[a] settlement does not lack good faith solely because the settling tortfeasor pays less than his or her theoretical proportion or fair share."  PacifiCare of California v. Bright Med. Assocs., Inc., 198 Cal. App. 4th 1451, 1464 (2011) (quotation marks and citation omitted).

---

[1] The FDIC calculates this figure by taking its total estimated damages, including interest, for the nine loans and dividing by the number of Defendants approving each loan.  (FDIC Mot. 7; Long Decl. ¶ 33.)

[2] Expert Report of Scott W. Carnahan (Carnahan Report) (Defs. Rothman and Van Dellen Opp. to FDIC's Mot. in Limine to Exclude the Testimony of Avram Tucker, Decl. of Damian J. Martinez, Ex. A, at 9; Docket No. 362.)

[3] Expert Report of Avram S. Tucker (Tucker Report) (Defs. Rothman and Van Dellen Opp. to FDIC's Mot. in Limine to Exclude the Testimony of Avram Tucker, Decl. of Damian J. Martinez, Ex. C, at 8; Docket No. 362.)

[4] The calculation of the Settlement Amount relative to the total claimed damages for all Defendants is less relevant than comparing the Settlement Amount to Rothman's proportionate share because the FDIC seeks to hold Rothman liable for only a portion of the loans.  Even if the jury were to find all Defendants jointly and severally liable for all Phase 1 loans at the Carnahan estimates, Rothman would have a contribution claim against the other Defendants for any amount over his proportionate share.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**MEMORANDUM**

"Discounting a settling tortfeasor's proportional share is appropriate because a plaintiff's damages are often speculative and the probability of legal liability therefor is often uncertain or remote." Id. The Court finds that the Settlement Amount is a sufficient approximation of the FDIC's total recovery, particularly in light of Rothman's proportionate liability, such that the settlement is in good faith. This conclusion is underscored by the Tech-Bilt court's recognition "that a settlor should pay less in settlement than he would if he were found liable after trial." 38 Cal. 3d at 499.

The maximum discount Rothman may receive for settling is 75% of his proportional share under the Carnahan estimates. Under the Tucker estimates, however, he may actually receive very little, if any, discount. As with any litigant, Rothman would take on significant risk and will bear substantial costs in going to trial. This is particularly true here as the jury will be confronted with a long trial and will decide complicated negligence, breach of duty, and financial analysis issues. In light of that risk, and considering the contested measure of damages, most notably from Defendants' own damages expert, it is clear that the settlement is not grossly disproportionate to what a reasonable person at the time of settlement would estimate Rothman's liability to be. The parties challenging the Agreement's good faith bear the burden of proof. They have failed to meet that burden here.

### B.    The Financial Conditions and Insurance Policy Limits of Settling Defendants

Rothman does not have the financial resources to pay the settlement or his potential liability in this action and his current net worth is negative. (FDIC Mot. 8; Long. Decl. ¶ 35.) Shellem and Koon do not dispute this characterization of Rothman's financial condition and do not address this Tech-Bilt factor in their opposition. They do complain, however, that the FDIC's agreement to pursue only insurance proceeds "will essentially allow Rothman to escape with no personal liability." (Shellem and Koon Opp. 6.)

It is well-settled under California law that "even where the claimant's damages are obviously great, and the liability therefor certain, a disproportionately low settlement figure is often reasonable in the case of a relatively insolvent, and uninsured, or underinsured, joint tortfeasor." Tech-Bilt, 38 Cal. 3d at 499 (quotation marks and citation omitted); see also Cnty. of L.A. v. Guerreo, 209 Cal. App. 3d 1149, 1157-58 (1989) (finding that a settling defendant's modest financial condition and insurance policy limits are necessarily controlling and effectively override the other Tech-Bilt factors). Rothman's insolvency is certain and, given the XL Specialty Insurance Co. ruling, he may very well be underinsured as well. Shellem and Koon bear the burden of proof on this issue and have again failed to meet that burden.

### IV.    CONCLUSION

There is only one plaintiff, and there is no suggestion, much less evidence, of any collusion, fraud, or tortious conduct aimed to injure nonsettling defendants. As all the other Tech-Bilt factors weigh in favor of a determination that the FDIC's settlement with Rothman is in good faith, the FDIC's motion is GRANTED.

IT IS SO ORDERED.